# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet

___Lackawanna___ **County**

**For Prothonotary Use Only:**

Docket No: 2023CV14

*TIME STAMP*

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| The Estate of Mark Donahue | JVA Deicing, Inc. |

**Are money damages requested?** ☒ Yes ☐ No

Dollar Amount Requested: (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☐ No

**Is this an *MDJ Appeal*?** ☐ Yes ☐ No

Name of Plaintiff/Appellant's Attorney: _Christopher P. Caputo, Esq._

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☒ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

MAURI B. KELLY
CLERK OF JUDICIAL RECORDS LACKAWANNA COUNTY
CIVIL DIVISION
2023 JAN 17 12:59

Caputo & Mariotti Law Offices
Joseph E. Mariotti, Esquire
Attorney I.D. No. 65535
Christopher P. Caputo. Esquire
Attorney I.D. No. 73446
730 Main Street
Moosic, PA 18507
Tel. No. (570) 342-9999
Fax No. (570) 457-1533
jmariotti@caputomariotti.com
cpcaputo@caputomariotti.com

MAURI B. KELLY
LACKAWANNA COUNTY

2023 JAN 17 P 1:00

CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

Attorneys for Plaintiff
Carol Donahue

| | |
|---|---|
| CAROL DONAHUE, Individually and as : | IN THE COURT OF COMMON PLEAS |
| Administratrix of the Estate of : | OF LACKAWANNA COUNTY |
| Mark Donahue, deceased, : | |
| Plaintiff, : | |
| v. : | CIVIL ACTION – LAW |
| Joseph Tuzze : | JURY TRIAL DEMANDED |
| JVA De-Icing : | |
| Cargill, Incorporated : | |
| Defendants. : | No. |

### NOTICE TO DEFEND

NOTICE YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed against you by the Court without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money, property, or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

NORTHERN PA LEGAL SERVICES
507 Linden Street
Suite 300
Scranton, PA 18503
(570) 342-0184

Pennsylvania Lawyer Referral Services
Lackawanna Bar Association
338 N. Washington Avenue
Third Floor
Scranton, PA 18503
(570) 969-9161
(570) 969-9170-Business Fax

Caputo & Mariotti Law Offices
Joseph E. Mariotti, Esquire
Attorney I.D. No. 65535
Christopher P. Caputo. Esquire
Attorney I.D. No. 73446
730 Main Street
Moosic, PA 18507
Tel. No. (570) 342-9999
Fax No. (570) 457-1533
jmariotti@caputomariotti.com
cpcaputo@caputomariotti.com

MAURI B. KELLY
LACKAWANNA COUNTY

2023 JAN 17 P 1: 00

CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

Attorneys for Plaintiff
Carol Donahue

| | | |
|---|---|---|
| CAROL DONAHUE, Individually and as | : | IN THE COURT OF COMMON PLEAS |
| Administratrix of the Estate of | : | OF LACKAWANNA COUNTY |
| Mark Donahue, deceased, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION – LAW |
| | : | JURY TRIAL DEMANDED |
| JVA De-Icing inc. | : | |
| Cargill, Incorporated | : | |
| Defendants. | : | No. |

## COMPLAINT

**AND NOW**, comes the Plaintiff, Carol Donahue, individually and as Administratrix of the Estate of Mark Donahue, deceased, by and through her Counsel, Caputo and Mariotti, and avers the following:

1.    The Plaintiff, Carol Donahue is an adult individual residing at 244 William Street, Pittston, Luzerne County, Pennsylvania 18640.

2.    Mark Donahue ("Decedent") was an adult individual who resided at 244 William Street, Pittston, Luzerne County, Pennsylvania 18640.

3.    Carol Donahue and Mark Donahue were married on October 21, 1984 in Taylor, Lackawanna County, Pennsylvania 18504.

4.    The Defendant, JVA De-Icing ("JVA") is a corporation doing business under the laws of the Commonwealth of Pennsylvania with offices at 331 Delaware Street, Mayfield, Lackawanna County, Pennsylvania 18433, and J.V.A. DeIcing inc. Principal office and place of business at 78 Cottage St. Carbondale Pa.48407.

5.    Defendant, Cargill, Incorporated, ("Cargill") is a corporation with a principal place of business located at 15401 McGinty Road, W., Wayzata, MN 55391 and their Cargill

Incorporated Deicing Technology Business Unit with a place of Business at 24950 Country Club Blvd. Suite 450, North Olmstead OH 44070.

6.    At all times pertinent hereto, Defendant, JVA Deicing Inc. was the deed owner, in possession and control of a salt storage and handling facility known as 4 ½ Coxton Road, Duryea Pa. 18642.

7.    On or about August 16, 2016, Defendant, JVA Deicing by and through their agent, Joseph Tuzze, entered into an Agreement with Defendant Cargill better known as Salt Storage and Handling Agreement ("Agreement"). See Agreement attached hereto and marked Exhibit "A".

8.    The Agreement was in effect from August 16, 2016 through July 31, 2021.

9.    Under the terms of said Agreement, Defendant Cargill would deliver Bulk Deicing Salt ("Product") to JVA Deicing, Inc. to be stored, handled, and delivered at 4 ½ Coxton Road, Duryea, Pennsylvania ("Facility").

10.    Under the terms and conditions of said Agreement, Defendant Cargill instructed, directed or required that the Defendant JVA would keep all product in a designated building at the facility on a non-permeable storage pad suitable for storing a minimum of 5,000 tons of product.

11.    Under the terms and conditions of said Agreement, Defendant Cargill instructed, directed and or required that the Defendant, JVA would provide a non-permeable bulk storage pad at the facility suitable for storing a minimum of 60,000 tons of product.

12.    Under the terms and conditions of said Agreement, Defendant, JVA would receive and promptly unload railcars for immediate delivery to Defendant Cargill's customers or move product to storage pad at the facility.

13.    Under the terms and conditions of said Agreement, Defendant, JVA would receive orders from Defendant Cargill and dispatch trucks, as directed by Defendant Cargill, to complete Defendant Cargill's Orders.

14.    Under the terms and conditions of said Agreement, Defendant, JVA would maintain a scale certification log to verify compliance with scale certification rules and regulations. Said log would be available at the Facility for Review by Defendant Cargill representatives.

15. Under the terms and conditions of said Agreement, Defendant, JVA would prepare shipping documents, car documents, car receipts and inventory reports in accordance with Defendant Cargill's specifications.

16. Under the terms and conditions of said Agreement, Defendant, Cargill will pay Defendant JVA storage and handling fees within thirty days of receipt of invoice

17. Under the terms and conditions of said Agreement, Defendant, Cargill will provide Defendant JVA with shipping documents, recaps and inbound rail schedules and railcar weights.

18. Under the terms and conditions of said Agreement, Defendant, JVA would inspect Defendant Cargill's product for damage and report any damage to Defendant Cargill.

19. Under the terms and conditions of said Agreement, Defendant Cargill instructed, directed and or required that the Defendant, JVA would wait for Defendant Cargill's instruction on how to proceed with any damaged or contaminated materials.

20. Under the terms and conditions of said Agreement, Defendant, Cargill was obligated and reserved the right to require their bulk salt pile be covered to protect their product, and Cargill retained the right to engage and pay a third party to cover and or tarp the salt pile.

21. Under the terms and conditions of said Agreement, Defendant Cargill instructed, directed or required that the Defendant, JVA would properly stack and shape the product as necessary for a third party to cover the product.

22. Under the terms and conditions of said Agreement, Defendant, JVA shall screen the product loaded into trucks to remove lumps by running it over with equipment when requested by Defendant Cargill. Said equipment will be furnished to Defendant JVA at Defendant Cargill's expense.

23. Under the terms of the agreement Cargill retained the right to access the facility premises and their bulk salt product to verify compliance by JVA with the terms of the agreement.

24. At all times pertinent hereto Cargill was obligated to determine the manner in which JVA was performing their duties and obligations under the agreement and to require the salt be covered and shaped in a particular manner.

25. At all times pertinent hereto Cargill undertook by contract to access the storage facility on Coxton Road to assure their bulk salt product was being handled and stockpiled consistent with the terms and provisions of the agreement with JVA.

26. At all times pertinent hereto JVA had an obligation to store the pile and handle the Cargill Bulk salt consistent with the Salt Institute Voluntary Salt Storage Guidelines for Distribution and Stockpiles.

27. Under the terms and conditions of said Agreement, Defendant, Cargill, required the Defendant, JVA to purchase Commercial General Liability Insurance, including personal injury, contractual liability and coverage for the property in the handler's care, custody, and control with limits of $2,000,000.00 per occurrence.

28. Under the terms and conditions of said Agreement, Defendant, Cargill, required the Defendant, JVA to require any subcontractors to maintain insurance in the amount of $2,000,000.00.

29. Under the terms and conditions of said Agreement, Defendant, Cargill, required the Defendant, JVA to receive prior approval from Cargill for any subcontractors and required JVA to provide Certificates of Insurance evidencing the "above coverages" prior to the commencement of the Agreement.

30. Under the terms and conditions of said Agreement, Defendant, Cargill, shall have access to the Facility at all reasonable times for the purpose of verifying records, taking inventories, removing the product, verifying compliance with the terms of this Agreement, or other purposes related to the operations contemplated therein.

31. Under the terms and conditions of said Agreement, Defendant, JVA shall notify Defendant, Cargill of JVA's receipt of any notice regarding any pending environmental inspection with respect to the facility, no later than 24 hours after said inspection or receipt of the notice.

32. Under the terms and conditions of said Agreement, Defendant Cargill instructed, directed or required that the Defendant, JVA shall provide storm water permits to Defendant, Cargill at Cargill's request.

33. On or about June 1, 2013, Cargill Incorporated entered into a Broker Services and Transportation Agreement with JVA Enterprises, Inc. (Broker).

34. In the recitals of said Agreement, Defendant Cargill desired to ship various types and quantities of products from various locations to customers of Cargill.

35. In the recitals of said Agreement, Defendant JVA was a licensed property broker by the Federal Motor Carrier Safety Administration in Docket Number MC965710.

36. Under the terms and conditions of the Agreement, Defendant, JVA agreed to arrange transportation of the products from origin locations to destination locations designated by Defendant, Cargill.

37. Under the terms and conditions of said Agreement, Defendant, JVA shall furnish Cargill with a Certificate or Certificates evidencing the insurance policies and/or endorsements prior to the first shipment. The Certificates of Commercial General Liability and Automobile Liability insurance shall name Defendant Cargill as additional insured.

38. Under the terms and conditions of said Agreement, Appendix D, Carriers will permit Cargill to audit its security procedures to ensure ongoing compliance.

39. Under the terms and conditions of said Agreement, Appendix D, Cargill's Corporate Security Department will offer certain carriers "security awareness" guidance in the form of an appropriate security checklist to be made available to such carrier's drivers.

40. Under the terms and conditions of said Agreement, Appendix D, Driver's should have carrier-issued photo identification on their person at all times and present such on demand from Defendant, Cargill's representatives.

41. Some time in February of 2021, JVA Inc. contracted with John P. Halliday Trucking Inc. to have Halliday provide trucking services to JVA and deliver the bulk salt to Cargill's customers.

42. On or about February 8, 2021, Plaintiff, Mark Donahue was an employee of John Halliday Trucking, Inc. where he was working as a Tri-Axle dump truck driver.

43. On or about February 8, 2021, Plaintiff Mark Donahue, was an employee of John Halliday Trucking, Inc. and was on the premises of JVA Deicing, to have his truck loaded with rock salt.

44. On or about February 8, 2021, Plaintiff Mark Donahue was instructed to park and parked his dump truck in a staging and loading line established by JVA in direct proximity to the approximate forty-foot-high salt pile to have rock salt loaded into his dump truck by the JVA loader operator.

45.     On or about February 8, 2021, Plaintiff Mark Donahue exited his dump truck and walked between his dump truck and a dump truck driven by Allen Fowler.

46.     At the time, Decedent Plaintiff was between the tri axles the approximate forty foot salt pile having been undercut by JVA loader operator, and having been uncovered and exposed to precipitation and moisture , collapsed sending a wave of salt from the collapsing mountain towards the dump trucks waiting to be loaded.

47.     Under the weight and force of the collapsing salt pile, the first dump truck in line was pushed into the second dump truck in line.

48.     Under the weight and force of the collapsing salt pile, the first and second dump trucks were pushed into the dump truck driven by Plaintiff Decedent, Mark Donahue.

49.     Plaintiff Decedent, Mark Donahue was crushed in-between the 2nd and third dump trucks and buried alive under the rock salt.

50.     Plaintiff Decedent, Mark Donahue feared imminent death as the salt pile collapsed.

51.     As a result of the incident described above, Plaintiff, Mark Donahue, suffered serious, severe and permanent injuries including, but not limited to: Flail Chest, Deformed back, missing upper teeth, torn inferior vena cava, hemopericardium, torn pericardium, transected aorta, torn right pulmonary parenchyma secondary to multiple rib fractures, torn diaphragms bilaterally, torn pleura bilaterally secondary to rib fractures, anthracosis of the lungs, bilateral hemothoraces, ruptured transected liver, ruptured spleen, penile abrasion, transected right kidney with focal hemorrhage, blunted renal papillae bilaterally, hemoperitoneum, rectroperitoneal hemorrhage, mesenteric hemorrhage, multiple rib fractures, fractured vertebral column from T10-T11 with complete spinal cord transection, fractured pelvis, left clavicle fracture, traumatic fear, multiple abrasions, lacerations and contusion and death.

52.     As a result of said injuries, Plaintiff, Mark Donahue's death was not instantaneous. Plaintiff had conscious pain and suffering. While the dump trucks were being pushed together and a mountain of salt was transferring to the area of the trucks, Mark Donahue was in fear of impending death, and attempted to claw his way out of the sand and from between the two trucks where he was ultimately crushed to death. His efforts were unsuccessful and resulted in him leaving scraping, brushing and scrubbing marks on the dump body of the second truck before perishing.

COUNT I

Negligence

Carol Donahue, Individually and as the Administratrix

for the Estate of Mark Donahue

vs.

JVA De-Icing, Inc.

PREMISES LIABILITY

53.     Plaintiff incorporates the proceeding paragraphs as if fully set forth herein at length.

54.     At all times pertinent hereto JVA Deicing possessed and controlled the premises and facility known as 4 ½ Coxton Road.

55.     At all times pertinent hereto, Defendant, JVA Deicing had a duty and obligation to all business visitors and/or invitees on their premises, including the Decedent Plaintiff, to keep the premises free from hazardous conditions not open and obvious to their business visitors and invitees and Defendant JVA Deicing breached their duty in that:

   a.  JVA knew or should have known they and/or their employees created a hazardous condition on the premises by stock piling and shaping the bulk salt pile in a manner causing the likelihood of collapse and/or avalanche of the salt pile;

   b.  By failing to tarp and/or stage tarp the pile of salt increasing the likelihood of collapse and/or avalanche;

   c.  Directing visitors including the Decedent Plaintiff to park their trucks in close proximity to the almost 40 foot high salt pile, knowing that collapse was likely and foreseeable.

   d.  Failing to warn invitees including Plaintiff Decedent regarding maintaining a safe distance from the almost 40 foot salt pile;

   e.  Failure to warn and/or adequately warn truck drivers including Decedent Plaintiff to remain in their vehicle at all times;

   f.  Failure to provide appropriate toileting facilities on their premises;

g.  All of the acts and/or omissions of the Defendant, JVA Deicing, created the hazardous condition on their premises and were the direct and proximate factual cause of the Decedent Plaintiff's injuries and death.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

**COUNT II**

**NEGLIGENCE**

**Carol Donahue, Individually and as the Administratrix**

**for the Estate of Mark Donahue**

**vs.**

**JVA De-Icing, Inc.**

**VICARIOUS LIABILITY**

56.  Plaintiff incorporates the proceeding paragraphs as if fully set forth herein at length.

57.  At all times pertinent hereto, Defendant, JVA Deicing, employed workers, agents, managers, machine operators, and/or scale house operators.

58.  At all times pertinent hereto, Defendant, JVA Deicing, is/was liable for the negligent, reckless, willful and wanton acts of its employees, said acts including but not limited to:

a.  Failing to cover the mountain of salt;

b.  By piling the salt in a manner that reached an exorbitant height for the place provided leaving it exposed to the elements of rain, sleet, snow, and other precipitation;

c.  Directing and allowing trucks to park in such a manner that placed them at risk of death or serious injury from a collapsing salt mountain;

d.  Allowing trucks to park within a distance of the salt mountain which was less than the overall vertical height of the salt mountain;

e.  Undercutting the salt pile even though the pile was not covered, and thereby causing it to collapse;

f.  Storing the mountain of salt in such a manner inconsistent with unloading the salt by undercutting the salt pile with a short reach front end loader;

g.  Staging too many trucks in a dangerous loading area;

h.  Allowing trucks to remain too close to the mountain of salt while other trucks were being loaded;

i.  Loading trucks close to a dangerously maintained salt pile in order to save fuel and time during loading;

j.  Failing to or refusing to cover the salt mountain to prevent the exposure of the salt to excessive precipitation and accumulation of moisture changing the properties of the bulk salt and increasing the likelihood of avalanche and or collapse;

k.  By maintaining control and dominion over the salt mountain and how it was maintained but failing to maintain it in such a way to protect the safety and lives of anyone required to work around the mountain;

l.  By refusing to keep the salt mountain on an impervious surface and keep barriers around it;

m.  By failing to provide, or ensure proper warnings were provided as to the dangers associated with improperly stored salt mountains;

n.  By failing to shape or require the salt mountain to be shaped in a way that prevented its collapse;

o.  By allowing individuals to approach and be in close proximity to the vertical face of a stockpile at a distance that was closer than the vertical dimension of the salt mountain, to avoid being injured or killed in an avalanche;

p.  Allowing trucks and individuals to park too close to loaders working on the salt mountain;

q.  Allowing individuals to place themselves between the salt mountain and heavy object, i.e., the tri-axles, in violation of its own industry developed standards;

All alleged negligent, reckless willful and wanton acts the direct, proximate, and or factual cause of the decedents injuries and death;

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

## COUNT III

### Carol Donahue, Individually and as the Administratrix
### for the Estate of Mark Donahue
### VS.
### JVA De-Icing, Inc.

## NEGLIGENT PERFORAMNCE OF AN UNDERTAKING

59.     Plaintiff incorporates the proceeding paragraphs as if fully set forth herein at length.

60.     At all times pertinent hereto, Defendant, JVA Deicing, had a duty and obligation to perform their undertaking in a reasonable manner that would prevent injury to the Decedent Plaintiff and those similarly situated.

61.     Defendant, JVA, failed to reasonably perform their obligations and duties under the Agreement with Defendant, Cargill as follows:

   a. Failure to stack and shape the salt pile in a manner to avoid collapse or avalanche;

   b. Failure to tarp or cover the bulk salt pile;

   c. Failure to store, pile and handle the bulk salt consistent with the Salt Storage Institute voluntary salt storage guidelines for distribution and stockpiles;

   d. Failure to obtain written approval from Cargill for all subcontractors;

   e. By failing to follow the rules, laws, statutes and regulations set forth by the Commonwealth of Pennsylvania;

   f. By allowing for an ultra-hazardous artificial condition to exist with a product owned and controlled by Defendant Cargill.

   g. By failing to provide notice and adequately warn and or prevent visitors from being in close proximity of the 40 foot salt pile;

All failures, omissions and breaches are the direct proximate and factual cause of Decedent Plaintiff's injuries and death.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

## COUNT IV

**Carol Donahue, Individually and as the Administratrix**

**for the Estate of Mark Donahue**

**vs.**

**Cargill, Inc.**

## NEGLIGENCE

62.     Plaintiff incorporates the proceeding paragraphs as if fully set forth herein at length.

63.     At all times Cargill retained the right and obligation to cover the salt pile and/or require tarping or stage tarping of the salt pile to protect the pile from excessive precipitation and from being piled to the excessive height of 40 feet.

64.     Cargill failed to exercise reasonable care in tarping and/or stage tarping the salt pile, said failure increasing the risk and likelihood of collapse and avalanche.

65.     At all times pertinent thereto, Defendant, Cargill, undertook the obligation to assure that their bulk salt was handled, stockpiled, and distributed in a hazard free safe manner.

66.     Defendant, Cargill, failed to reasonably undertake their obligation to safely stockpile, handle and distribute their bulk salt in the following manner:

      a.   Failing to cover the Mountain of Salt;

      b.   Failing to properly train, supervise, monitor, and educate their employees and/or subcontractors and or handlers;

      c.   Failing to or refusing to cover the salt mountain as required by "The Salt Research Institute";

      d.   By maintaining control and dominion over the salt mountain and how it was maintained but failing to maintain it in such a way to protect the safety and lives of anyone required to work around the mountain;

      e.   By failing to shape or require the salt mountain to be shaped in a way that prevented its collapse;

f.  By maintaining control over the mountain but failing to exercise control to ensure the safety of anyone working on or near the mountain of salt;

g.  By allowing others to perform work at the mountain, yet retaining control over parts of the handling of the mountain, yet refusing to ensure the safety of others around an inherently dangerous facility, product or operation;

h.  By allowing others to perform work at the salt mountain, yet retaining control over parts of the handling of the mountain, yet refusing to act in a reasonable manner to ensure the safety of others around an inherently dangerous facility, product or operation;

i.  By failing or refusing to properly stack and shape the salt mountain and failing to ensure the mountain was properly shaped and stacked;

j.  By knowingly and recklessly allowing the salt mountain to remain uncovered, even though uncovered salt stockpiles or mountains cannot be undercut because wet salt does not have the properties to fill in the undercut areas, but is likely to solidify into clumps and blocks resulting in collapse and avalanche;

k.  By having access to the facility to inspect the mountain yet failing to or refusing to properly do so;

l.  By refusing to adhere to, and requiring all parties to adhere to the Salt Institute's Voluntary Salt Storage Guidelines for Distribution Stockpiles, and to incorporate practices from the guidelines;

m.  By failing to stage tarp or require stage tarping;

n.  By not having a storm water retention pond;

o.  By having control to and access to the property, facility and salt and ability to cover the salt mountain, yet negligently, knowingly, wantonly and intentionally refusing to do so, regardless of the great risk of injury or death;

p.  By knowing or having the ability to know that subcontractors or employees were performing their operations in violation of Federal, State and Municipal Laws and allowing them to continue to do so;

q. By knowing or having the ability to know that subcontractors or employees were performing their operations in violation of their Agreements and allowing them to continue to do so;

r. By knowing or having the ability to know that subcontractors or employees were performing their operations in violation of The Salt Institute's Salt Storage Guidelines for Distribution and Stockpiles, and allowing them to continue to do so;

s. Creating and allowing a dangerous condition to exist and remain on its property or on property which it held under its control.

All failures are the direct and proximate and/or factual cause of the Decedent Plaintiff's injuries and death;

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

## COUNT V.

**Carol Donahue, Individually and as the Administratrix**
**for the Estate of Mark Donahue**

**vs.**

**Cargill, Inc.**

## NEGLIGENCE

67. Plaintiff incorporates the preceding paragraphs as if fully set forth herein at length.

68. At all times pertinent hereto Defendant, Cargill, retained control of the manner in which their bulk salt was to be handled, stored, stockpiled and distributed by Defendant, JVA Deicing, and Cargill failed to exercise this control with reasonable care in the following manner:

a. Allowing JVA to store the bulk salt in a manner inconsistent with the terms of Cargill's Agreement with JVA.

b. Allowing bulk salt to be piled too high;

c. Allowing bulk salt to be placed in an area too small to safely pile greater than 60,000 tons of bulk salt;

    d. Allowing the massive salt pile to be shaped in an unsafe manner more likely to collapse;

    e. Failing to access the property to assure compliance with the agreement with JVA;

    f. Failing to assure compliance with the salt storage and handling methods required under the agreement;

All acts, failures and omissions are the direct, proximate and factual cause of Decedent Plaintiff's injuries and death.

    69. At all times pertinent hereto Cargill employed Defendant JVA Deicing to stockpile, store, handle and distribute massive amounts of Cargill's bulk salt product; Cargill knew, and/or with the exercise of reasonable care should have recognized this work was likely to create a peculiar risk of physical harm to the Decedent Plaintiff and others similarly situated unless special precautions were taken, and Cargill's failure to assure these special precautions were taken is the direct/proximate and/or factual cause of Decedent Plaintiff's injuries and death.

    70. The special precautions aforementioned include but are not limited to the following:

    a. The bulk salt pile is to be tarped and shaped consistent with tarping and stage tarping;

    b. Bulk salt was to be stored and handled consistent with the Salt Institute Voluntary Salt Storage Guidelines for Distribution and Stockpiles;

    c. Bulk salt to be stored in wind rows

    d. Bulk salt to be protected to maintain its angle of repose; and

    e. Warning and preventing individuals from standing, walking or parking too close to the pile.

The failures and omissions all the direct proximate and or factual cause of the Decedent Plaintiff's injuries and death;

    **WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

<u>COUNT VI – Wrongful Death</u>

**Carol Donahue, Individually and as the Administratrix**

**for the Estate of Mark Donahue**

**vs.**

**JVA De-Icing, Inc.**

71.     Plaintiff incorporates the preceding paragraphs as if fully set forth.

72.     The Defendant, JVA De-Icing's actions, omissions and failures to act as stated in the preceding paragraphs, were the direct and proximate causes of the injuries and death of Mark Donahue.

73.     Mark Donahue's injuries and death were caused by the negligence, carelessness, recklessness, knowing, willful and wanton actions and failures to act of the Defendant.

74.     The injuries caused by the Defendant and the Defendant's actions, omissions, failures to act, negligence, carelessness, recklessness, knowing and wanton behavior ultimately led to the death of Mark Donahue

75.     As a result, the Plaintiff's Decedent, sustained serious personal injury, funeral expenses, estate administration expenses, out-of-pocket expenses, physical pain and suffering, mental anguish, mental pain and suffering, fear of death, economic loss and lost economic horizons.

76.     The Plaintiff as Administratrix of the Estate of Mark Donahue also claims on behalf of the Estate the value of the expectancy and length of the life of Mark Donahue both of which were improperly cut short by reason of the tortious conduct as listed herein.

77.     The wrongful, negligent, careless, reckless, knowing and wanton acts and omissions of the Defendants as set forth in the within Complaint were the direct and proximate cause of the injuries sustained by, and the ultimate death of the Plaintiff's Decedent, Mark Donahue on February 8, 2020.

78.     The Plaintiff, Carol Donahue is the Administratrix of the Estate of Mark Donahue having been so appointed by the Luzerne County Register of Wills.

79.     Plaintiff brings the within action pursuant to 42 Pa. C. S. A. Sec. 8301 as Administratrix of the Estate of Mark Donahue.

80.     The Decedent Mark Donahue was 66 years of age at the time of his death.

81.     By reason of the death of Mark Donahue, the Estate of Mark Donahue has suffered pecuniary loss, has incurred expenses including funeral expenses, loss of economic horizons and other expenses.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

### COUNT VII – Wrongful Death

**Carol Donahue, Individually and as the Administratrix**

**for the Estate of Mark Donahue**

**VS.**

**Cargill Incorporated**

82.     Plaintiff incorporates the preceding paragraphs as if fully set forth.

83.     The Defendant, Cargill Incorporated's actions, omissions and failures to act as stated in the preceding paragraphs, were the direct and proximate causes of the injuries and death of Mark Donahue.

84.     Mark Donahue's injuries and death were caused by the negligence, carelessness, recklessness and the knowing, willful and wanton actions and failures to act of the Defendant.

85.     The injuries caused by the Defendant and the Defendant's actions, omissions, failures to act, negligence, carelessness, recklessness, knowing and wanton behavior ultimately led to the death of Mark Donahue

86.     As a result, the Plaintiff's Decedent, Mark Donahue sustained serious personal injury, funeral expenses, estate administration expenses, out-of-pocket expenses, physical pain suffering, mental anguish, mental pain and suffering, fear of death, economic loss and lost economic horizons.

87.     The Plaintiff as Administratrix of the Estate of Mark Donahue also claims on behalf of the Estate the value of the expectancy and length of the life of Mark Donahue both of which were improperly cut short by reason of the tortious conduct as listed herein.

88.     The wrongful, negligent, careless, reckless, knowing and wanton acts and omissions of the Defendants as set forth in the within Complaint were the direct and proximate cause of the injuries sustained by, and the ultimate death of the Plaintiff's Decedent, Mark Donahue on February 8, 2020.

89.     The Plaintiff, Carol Donahue is the Administratrix of the Estate of Mark Donahue having been so appointed by the Luzerne County Register of Wills.

90.     Plaintiff brings the within action pursuant to 42 Pa. C. S. A. Sec. 8301 as Administratrix of the Estate of Mark Donahue.

91.     The Decedent Mark Donahue was 66 years of age at the time of his death.

92.     By reason of the death of Mark Donahue, the Estate of Mark Donahue has suffered pecuniary loss, has incurred expenses including funeral expenses, loss of economic horizons and other expenses.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

## <u>COUNT VIII - Survival</u>

### Carol Donahue, Individually and as the Administratrix
### for the Estate of Mark Donahue

### VS.

### JVA Deicing

93.     Plaintiff incorporates the preceding paragraphs as if fully set forth.

94.     Plaintiff brings the instant survival action on behalf of the Decedent, Mark Donahue, pursuant to 20 Pa C.S. Sec.3373 and pursuant to 42 Pa. C. S. A. Sec. 8302.

95.     Plaintiff Decedent, Mark Donahue feared imminent death, as the salt pile collapsed and suffered immeasurable pain and suffering, massive trauma, multiple abrasions, and crush injuries.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

### COUNT IX - Survival
### Carol Donahue, Individually and as the Administratrix
### for the Estate of Mark Donahue
### VS.
### Cargill Incorporated

96. Plaintiff incorporates the preceding paragraphs as if fully set forth.

97. Plaintiff brings the instant survival action on behalf of the Decedent, Mark Donahue, pursuant to 20 Pa.C.S.Sec.3373 and 42 Pa.C.S.A Sec.8302.

98. Plaintiff Decedent Mark Donahue feared imminent death as the salt pile collapsed on top of him and suffered immeasurable pain and suffering massive trauma, multiple abrasions broken bones and crush injuries.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

### COUNT X – Loss of Consortium
### Carol Donahue, Individually and as the Administratrix for the Estate of Mark Donahue
### VS.
### JVA De-Icing, and Cargill Incorporated

99. Plaintiff incorporates the preceding paragraphs as if fully set forth.

100. The Plaintiff, Carol Donahue, individually, has lost the love, affection and support of her husband, as a result of the aforesaid willful wanton reckless negligent acts of the defendant.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court issue an appropriate order for economic, punitive and pain and suffering damages exceeding the Statutory Arbitration limit.

Respectfully submitted,
**CAPUTO & MARIOTTI LAW OFFICES**

By: _____

Christopher P. Caputo
Joseph E. Mariotti, Esquire
Attorneys for Plaintiff

Caputo & Mariotti Law Offices
Joseph E. Mariotti, Esquire
Attorney I.D. No. 65535
Christopher P. Caputo. Esquire
Attorney I.D. No. 73446
730 Main Street
Moosic, PA 18507
Tel. No. (570) 342-9999
Fax No. (570) 457-1533
jmariotti@caputomariotti.com
cpcaputo@caputomariotti.com

MAURI B. KELLY
LACKAWANNA COUNTY

2023 JAN 17 P 1: 00

CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

Attorneys for Plaintiff
Carol Donahue

| | | |
|---|---|---|
| CAROL DONAHUE, Individually and as | : | IN THE COURT OF COMMON PLEAS |
| Administratrix of the Estate of | : | OF LACKAWANNA COUNTY |
| Mark Donahue, deceased, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION – LAW |
| | : | JURY TRIAL DEMANDED |
| Joseph Tuzze | : | |
| JVA De-Icing | : | |
| Cargill, Incorporated | : | |
| Defendants. | : | No. |

## CERTIFICATE OF COMPLIANCE

I, Christopher P. Caputo, Esquire certify this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

CAPUTO & MARIOTTI LAW OFFICES

By: _____
Christopher P. Caputo
Attorney for Plaintiff

## VERIFICATION

I, Carol Donahue, Individually and as Administratrix of the Estate of Mark Donahue verify the statements made in the foregoing Complaint are true and correct. I understand false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_Carol Donahue_

Carol Donahue, Individually and as
Administratrix of the Estate of Mark Donahue